WILLIAM F. HARRAH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARIE E. HARRAH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

L. G. MCDONALD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JULIUS C. KIRCHNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. K. ANDERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FREDERICK A. HASTINGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21643, 25269, 25427, 25428, 33242, 38864.

Promulgated April 27, 1933.

*Arnold R. Baar, Esq., Arthur R. Foss, Esq.,* and *Florence L. Siverston, C. P. A.,* for the petitioners.
*Elden McFarland, Esq.,* for the respondent.

1306

OPINION.

STERNHAGEN: The issues are entirely in the realm of fact, and evidence of widely varying kinds and qualities was taken for three days, ranging from accurate records and accounts, through narrative statements of events, causes, motives and expectations, to categorical personal opinions of value, given by witnesses called by both sides. This evidence has been considered not only with full regard for the impression received at the time of trial as to the witnesses and their testimony, but with regard to subsequent detailed study and analysis of its significance and effect. There has been neither " slavish adherence to a formula " nor an escape from the restraints which the record imposes. Without disregarding any of the evidence, we have given it such weight as its significance in the problem seemed to demand. Obviously such weight and significance can not be measured or described, consisting as they do of ponderable and imponderable factors, the appreciation of which is to some extent born of our experience in other cases involving valuation.

The record contains evidence of the history of the corporation's business and of the corporation, showing the reasons, motives and expectations of its creators, and the terms upon which it was created; the development of the business, together with its production, sales, earnings and dividends, and the trend thereof generally toward improvement; the assets, both tangible and intangible (including its secret process), with their appraisal at one time and another by several methods; the sales at various times of small lots of the shares, the prices and the circumstances in which such sales occurred with regard to their reflection of value; the opinions of several persons, interested and disinterested, whose qualifications were widely diversified as to experience, knowledge of the significant facts, and

ability to consider the factors of valuation. This has all been carefully considered.

The petitioners, in their several returns for 1922 used, as the basis for determining the gain derived from the sale of their shares, a value on March 1, 1913, for each share held on that date of $421.70 (in one instance, $421.57). The respondent, in determining the deficiencies, held the values on that date to be $193.86 and $185.45. During this proceeding, the respondent claimed that such value was no more than $100, and this he now urges is the value shown by the evidence and upon which a claimed increase in the deficiency should be based. The petitioner contends that the March 1, 1913, value established by the evidence is not less than $350 and is perhaps $500. We have found as a fact that such value was $200 This, it should be said, is not a figure thoughtlessly hit upon as a convenient intermediate figure. It has been arrived at as a fair representation of the evidence, and reflects our opinion of what a seller and a buyer, acting fairly, freely, and with substantial knowledge of the facts and reasonable prospects, would have agreed upon as a price. This figure should be used in a recomputation which will of course take into consideration the later stock dividends and purchases in determining the total gains of the several petitioners. Such other factors of the computation are not in dispute and require no consideration in this report.

Marie E. Harrah acquired her shares originally by gift on July 1, 1919, increased later by a stock dividend. The basis of gain or loss upon their sale by her in 1922 is the value of the shares at the time of the gift. She used in her return a figure representing $225 as such value, which the respondent reduced to $150. This figure the respondent insists is supported by the evidence, while the petitioner now urges that $400 should be used. We think the evidence establishes the fair market value on July 1, 1919, to have been $250 a share and have so found as a fact.

The third question is fraught with the utmost confusion of treatment by all the parties. It grows out of the circumstance that the shareholders all agreed to sell their shares to one buyer, and appointed one of their number to complete the transaction and distribute to each his proper part of the selling price. The corporation at that time had a surplus on hand. Although each knew at the completion of the transaction that in one way or another he had received $238.75 in respect of each share he had held, a failure to make an analysis of the accounting source of this figure resulted in various allocations of it by them on their several returns. Such an analysis is now available from the evidence, and it indicates without much doubt that of the $238.75 received, $20 per share was a dividend out

of the corporation's earnings and profits accumulated since March 1, 1913, and hence subject only to surtax, and $218.75 was sale price. In some instances the respondent has taxed the same amount twice by including it in both categories. This error should be corrected, and it only remains for the respondent in proceeding under Rule 50 to divide the $238.75 into a dividend of $20 and a sale price of $218.75.

*Judgment will be entered under Rule 50.*