Rufus F. and Marguerite H. TURNER,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 8454.

United States Court of Appeals
Fourth Circuit.

Argued March 21, 1962.

Decided May 16, 1962.

Fortescue W. Hopkins, Roanoke, Va.,
for petitioners.

Stanton H. Zarrow, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Elmer J. Kelsey, Attys., Dept. of Justice, on brief), for respondent.

Before SOPER, BRYAN and BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This is an appeal from a decision of the Tax Court sustaining the Commissioner's determination of a deficiency of $11,670.36 in income tax for the year 1957 of the petitioners, Rufus F. Turner and wife, Marguerite H. Turner, hereafter referred to as Turner. The appeal involves two questions: first, whether the taxpayer received property other than stock and securities within the provisions of § 351(b) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 351 (b); and second, whether the taxpayer received a taxable bonus of $10,000.00 in the year 1957.

Prior to January 1, 1957, Turner was engaged in the fresh produce wholesale grocery business in the town of Martinsville, Virginia, as a sole proprietor. In November 1956, upon the advice of his accountant and attorney, Turner caused a Virginia corporation to be set up under the name of Cash Produce Company, Inc. On January 1, 1957, certain tangible assets of Turner's sole proprietorship having a cost basis of $49,493.46; the good will of the business, which his accountant computed to be worth $74,300.00, and all of its liabilities were transferred to the corporation in exchange for 1,365 shares of stock. The opening statement of the corporation showed a debit item under the following heading: "Non current liability—note payable to officer—unsecured and without interest of $48,893.46".

On January 25, 1957, the Board of Directors of the corporation met and adopted a resolution approving the transfer of assets and assumption of liabilities as shown on the opening statement and the issuance of capital stock therefor. This statement showed the total value of the assets to be $129,095.63 subject to liabilities of $54,095.63 (this item included the note payable to officer). At some time between February and November 1957 the accountant Ford prepared for Turner an instrument which purported to reflect the nature of this corporate liability to Turner, who was the officer referred to in the debit item above. The instrument read as follows:

"Notice of Indebtedness
"January 1, 1957

"For value received, We, Cash Produce Co., Inc., do hereby promise to pay to Mr. Rufus F. Turner, his heirs or assigns, the amount of forty-eight thousand, eight hundred, ninety-three dollars and forty-six cents, ($48,893.46) without interest, payable at the office of the corporation on or after February 1, 1958; also the corporation is not to furnish security of any type for this indebtedness. It is also agreed that the payee may draw funds from this corporation at any time upon the pledge of this note as security, said drawings to be deducted from the amount of this liability prior to settlement.

"Accepted and agreed to the above this date January 1, 1957.

"(S) Rufus F. Turner
"Payee

"Cash Produce Co., Inc.
"(S) Rufus F. Turner
"Registered Agent
"President"

On January 14, 1958, a debenture bond of $48,893.46 was issued by the corporation payable to Turner. Although this bond was executed and filed with the Virginia State Corporation Commission on January 14, 1958, it was dated January 1, 1957. It was conceded by the Commissioner that this bond would constitute a security within the meaning of Section 351(a).

A journal entry for the corporation on July 31, 1957, (the close of its first fiscal year) showed a salary payment of $12,000.00 to Turner with a notation that $10,000.00 of that sum was trans-

ferred to the capital stock fund of the corporation and the further notation: "To record additional salary paid to R. F. Turner in corporate common stock". The minutes of the annual meeting of the stockholders held on January 7, 1958, reflect the following entry with respect to that transaction: "Having been previously approved by the Board of Directors, the Board voted unanimously to approve the payment of a bonus of $12,000.00 for the year ending July 31, 1957, to R. F. Turner, the President. Mr. R. F. Turner advised that after various withholdings he had used the remainder of the sum of $10,000.00 in the purchase of 200 shares of common stock at $50.00 per share to be issued and dated July 31, 1957". A report to the State Corporation Commission dated January 10, 1958, recited that 200 shares at $50.00 per share were to be issued for $10,000.00 in cash.

The taxpayer contends that the indenture issued on January 14, 1958, was the final step of the plan to incorporate the business and that it was an integral part of the plan from its beginning; that its issuance was delayed by his accountant and his attorney while they were searching for a proper form. The testimony of both the attorney and the accountant supported the taxpayer in this respect. The attorney testified that when the taxpayer and his accountant came to his office in November 1956 Mr. Turner was primarily concerned with problems of his health and how he could obtain funds from the business after his retirement. The accountant confirmed this and stated that he had proposed an indebtedness from the corporation and that he had expressly warned the parties that the proposed indebtedness must be reflected in a long term debenture bond in order to avoid tax consequences at the time of incorporation and also satisfy Mr. Turner's desire for a source of funds after he reached sixty-five. The taxpayer, therefore, argues that the transaction considered as a whole is tax free because the only things which he received in exchange for the assets of his proprietorship were the stock and the indemnity bond delivered to him on January 14, 1958. He contends that the so-called "Notice of Indebtedness" was merely a temporary memorandum of the debt and without tax significance.

The Commissioner contends otherwise, and the Tax Court has accepted his contentions, holding that the "Notice of Indebtedness" was an effective debt instrument constituting "other property" within the meaning of Section 351(b); that it was received by the taxpayer as "boot" along with his stock in exchange for his proprietorship assets, and was therefore taxable. Upon this record we are not able to say that the court was clearly in error. All of the contemporaneous written evidence supports the court's findings, and if it does not actually negate the contention of the taxpayer it is at the least no more compatible with those contentions than with the court's findings. In such a situation it is peculiarly within the province of the fact finding agency to make the necessary determination. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). It is obvious that the testimony of both the accountant and the attorney was substantially rejected by the court insofar as their original intentions or their subsequent conduct in preparing the indenture were attributed to the taxpayer or his corporation. However, the decision of the court is not wholly incompatible with their testimony. It is conceivable that at the planning meetings in November and December of 1956 these gentlemen decided that the corporate indebtedness to Turner should be reflected in a tax free long term debenture bond within the provisions of Section 351(b), but as time went on and the bond was not forthcoming Mr. Turner grew impatient, and especially when he learned that Mr. Ford was severing his connections with the accounting firm which was handling his business. Mr. Turner insisted upon some evidence of the indebtedness which he could "hold in his hands". (At

this point it was Turner's intentions and conduct which became legally effective rather than that of his professional advisers.) Thus the issuance of the "Notice of Indebtedness" was not a step in an integrated plan conceived from the beginning but a change in plan which upset the original calculations of his professional advisers with unfortunate tax consequences to Mr. Turner. Thus it was their conclusions with respect to the legal consequences of the issuance of the "notice" which the court rejected rather than the factual testimony of these witnesses.

We now come to the taxpayer's alternative contentions with respect to the legal effect of the "Notice of Indebtedness".

Counsel has carefully and ably prepared an elaborate series of alternative positions to which he withdraws in stubborn resistance of defeat, but we fear that they must fall with the collapse of his main line of defense.

■ Second in importance to the court's finding that the debenture bond issued on January 14, 1958, was not a final and concluding step in an over-all plan was the court's finding that the good will of the business which was transferred to the corporation was properly evaluated by its accountant at $74,-300.00. The contemporaneous conduct and declarations of this accountant as the man most familiar with taxpayer's business are certainly substantial evidence to support the court's findings.

■ In outline the transaction consisted of a transfer of certain tangible assets plus good will to a corporation in exchange for stock and either a short term note, or a drawing account. Since the transaction would be taxable in either event we, therefore, see no reason to draw any fine distinction between the two. Harrison v. Commissioner of Internal Revenue, 235 F.2d 587 (8 Cir. 1956), cert. den. 352 U.S. 952, 77 S.Ct. 327, 1 L.Ed.2d 243; Lloyd-Smith v. Commissioner of Internal Revenue, 116 F.2d 642 (2 Cir. 1941).

■ Nor are we impressed with counsel's argument that the "other property" was not received by Turner within the meaning of the statute because the document was not formally authorized by action of the stockholders and directors as required by Virginia law, and, therefore, the corporation would have a defense to any suit brought thereon. It is sufficient to point out in answer to this argument that Turner was practically the sole stockholder and the President of the corporation, thus any assertion of these defenses by the corporation would be under his control. Looking to the substance of the transaction we think he did receive the property within the meaning of the statute.

■ Having accepted the court's finding of the value of the good will transferred to the corporation, there can be no question. but that the so-called notice of indebtedness had a market value equivalent to its face. Even accepting the taxpayer's contention that no good will was transferred to the corporation, it still had tangible assets in excess of the face of the note, thus justifying the Tax Court's finding that its market value was equal to its face since the holder of such an instrument had priority over the stockholders with respect to the corporate assets.

The second question raised by the taxpayer is whether the Tax Court was in error in finding that Turner received a cash bonus of $10,000.00 in 1957.

■■ While the taxpayer is in the unfortunate position of trying to escape the consequences of his deliberate misrepresentations to the Virginia Corporation Commission we cannot but feel that the Tax Court ignored the obvious realities of the situation. The contemporaneous entries clearly reflected an intention that he have stock—there was no evidence of cancelled checks or cash transferral to support the court's findings. We are not to sit in judgment upon the taxpayer's moral standards. J. M. Turner & Co. v. Commissioner of Internal Revenue, 247 F.2d 370 (4 Cir. 1957). We find the Tax Court to be

clearly in error on this issue. We must, therefore, remand the case in order that the court may determine the market value of the stock issued to Turner as a bonus and the tax year of its receipt.

Reversed in part and remanded.