Rufus F. Turner and Marguerite H. Turner v. Commissioner.
Turner v. Commissioner
Docket No. 82122.
United States Tax Court
T.C. Memo 1964-161; 1964 Tax Ct. Memo LEXIS 173; 23 T.C.M. (CCH) 952; T.C.M. (RIA) 64161; June 10, 1964
Fortescue W. Hopkins, for the petitioners. Bernard A. Heeke, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: This case has been remanded to us by the United States Court of Appeals for the Fourth Circuit pursuant to that Court's opinion in Turner v. Commissioner, 303 F. 2d 94 (C.A. 4, 1962), certiorari denied 371 U.S. 922, rehearing denied 371 U.S. 965. The appellate court affirmed in *174 part and reversed in part a Memorandum Opinion of this Court and remanded "the case in order that the court may determine the market value of the stock issued to Turner as a bonus and the tax year of its receipt." The appellate court commented, at pp. 97-98, that: While the taxpayer is in the unfortunate position of trying to escape the consequences of his deliberate misrepresentations to the Virginia Corporation Commission we cannot but feel that the Tax Court ignored the obvious realities of the situation. The contemporaneous entries clearly reflected an intention that he have stock - there was no evidence of cancelled checks or cash transferral to support the court's findings. We are not to sit in judgment upon the taxpayer's moral standards. J. M. Turner & Co. v. Commissioner of Internal Revenue, 247 F. 2d 370 (4 Cir. 1957). We find the Tax Court to be clearly in error on this issue. * * * Findings of Fact In addition to those facts found in our original opinion, Tax Court Memorandum Opinion 1961-101, which are incorporated herein by reference, an additional stipulation of facts was filed and is also incorporated herein by reference. Petitioners Rufus F. Turner *175 (hereinafter referred to as petitioner) and his wife, Marguerite H. Turner (hereinafter referred to as Marguerite), reside in Martinsville, Virginia. They filed a joint income tax return, using the cash basis of accounting, for the calendar year 1957 with the district director of internal revenue for Virginia. Petitioner, as sole proprietor, had engaged in the operation of a fresh produce wholesale grocery business under the name of Cash Produce Company for 36 years in Martinsville. In November 1956, upon the advice of his accountant and attorney, petitioner incorporated the sole proprietorship under the name of Cash Produce Company, Inc. (hereinafter referred to as Cash Produce.) As part of the incorporation plan, petitioner was to receive 1,500 shares of Cash Produce's common stock, having a par value of $50 per share. Instead of being issued the entire 1,500 shares, petitioner, on or about February 28, 1957, had Cash Produce issue 625 shares of his stock to certain other individuals. In exchange for these shares, the individuals gave petitioner notes equal to the par value of the stock received. The individuals, the number of shares they received, and the amounts of their notes *176 are as follows: Stock
certi-
No. of
Amount
ficate
To whom issued
shares
of note
number
Marguerite
500
$25,000
12
Consuelo T. Ingram
100
5,000
13
James R. Ingram
65
3,250
14
Subsequently, some time prior to the end of 1957, petitioner cancelled $3,000 of each note as a gift to each person. Cash Produce's stock certificate book, as to the first 15 common stock certificates, shows the following: Stock
certi-
ficate
No.
num-
of
Date of
ber
shares
issue
To whom issued
1
20
1/ 1/57
petitioner
2
20
1/ 1/57
petitioner
3
20
1/ 1/57
petitioner
4
20
1/ 1/57
petitioner
5
20
1/ 1/57
petitioner
6
20
1/ 1/57
petitioner
7
12
1/ 1/57
petitioner
8
1
1/ 1/57
James R. Ingram
9
1
1/ 1/57
Marguerite
10
1
1/ 1/57
Consuelo T. Ingram
11
700
2/28/57
petitioner
12
500
2/28/57
Marguerite
13
100
2/28/57
Consuelo T. Ingram
14
65
2/28/57
James R. Ingram
15
200
7/31/57
petitioner (the
shares here involved)
Cash Produce used an accrual basis of accounting for fiscal years ending July 31. On its balance sheet for July 31, 1957, Cash Produce reported: CAPITAL
Common stock - authorized 3,000
shares of $50.00 par value; issued
and outstanding, 1,700 shares
$85,000.00
Retained earnings
Net earnings for the period from
November 14, 1956 (date of in-
corporation) through July 31,
1957
1,701.14
*177 One of the closing journal entries of Cash Produce for the fiscal year ended July 31, 1957, was as follows: Officers' salaries
$12,000.00
Payroll taxes
55.12
Social security tax payable
$ 110.25
Withholding taxes
1,919.88
[Petitioner] - accounts payable
24.99
Capital stock
10,000.00
To record additional salary paid to
[petitioner] in corporate common
stock. The journal entry was prepared on petitioner's request that he be compensated in full for his corporation work for the period ending July 31, 1957. Cash Produce deducted the entire $12,000 additional salary paid to petitioner on its income tax return for the fiscal year ended July 31, 1957. Petitioners included the entire $12,000 additional salary on their 1957 return. The minutes of the "annual meeting of all the stockholders and the Board of Directors of Cash Produce," held on January 7, 1958, stated: Having been previously approved by the board of directors the board voted unanimously to approve the payment of a bonus of $12,000.00 for the year ending July 31, 1957 to [petitioner], the president. [Petitioner] advised that after various withholdings that he had used *178 the remainder of the sum of $10,000.00 in the purchase of 200 shares of the common stock at $50.00 per share to be issued and dated July 31, 1957. A "Stock Statement" dated January 10, 1958, was filed with the Virginia State Corporation Commission by Cash Produce. It contained the following sentence: If stock is to be issued for money, give the amount per share to be received by the corporation after all underwriting discounts and selling commissions: $10,000.00 in cash for 200 shares common stock at $50.00 per share in one issue. The State Corporation Commission's authorization for the issuance of the stock bonus to petitioner was obtained on January 10, 1958. In an amended petition, petitioners claimed an overpayment of taxes in the amount of $3,056.48, relying on the following alleged errors: The [respondent] erred in failing to eliminate from petitioner's 1957 taxable income the amount of $10,000 representing an accrued bonus or a bonus of 200 shares of capital stock of Cash Produce * * *. Alternately, if the Court should determine that said stock (or bonus) referred to * * * above, was constructively received by petitioner in 1957, then the [respondent] erred in *179 failing to determine that the fair market value of said 200 shares of stock (or bonus) was zero or an amount substantially less than $10,000. The 200 shares of stock were constructively received by petitioner in 1957. The fair market value of the stock received by petitioner was $50 a share. Additional salary of $10,000 was correctly reported. Opinion Under the appellate court's mandate, we are to "determine the market value of the stock issued to [petitioner] as a bonus and the tax year of its receipt." If, however, the year of receipt was not 1957, the taxable year in issue, the necessity for determining the market value of the stock is obviated, [1] since Gains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer unless includible for a different year in accordance with the taxpayer's method of accounting. * * * Under the cash receipts and disbursements method of accounting, such an amount is includible in gross income when actually or constructively received. [Sec. 1.451-1(a), Income Tax Regs.] *180 Petitioners, relying on LaMotte T. Cohu, 8 T.C. 796 (1947), contend that the stock was not constructively received in 1957. Petitioners' reliance on Cohu is misplaced. In that case the California Commissioner of Corporations had put "substantial limitations" [2] of the stock issue, which "requirements were clearly conditions precedent to the company's authorization to issue shares." ( Cohu, supra at 806.) In the present case, on the other hand, the filing of the statement was not a "substantial limitation or restriction" on the issuance of the stock, as petitioners would have us find, for "failure to file such a statement [does] not impair the legality or validity of the issue." Va. Code Ann. Sec. 13.1-16 (1956). [And cf., Ohio Battery & Ignition Co., 5 T.C. 283, 288 (1945); Glenwood Sanatorium, 20 T.C. 1099, 1102 (1953).] *181 In addition, clearly militating against petitioners are the facts that they considered the stock income in 1957 and so reported it on their return; that Cash Produce recognized the stock bonus as an expenditure in 1957 and so deducted it on its return; that the stock record book of Cash Produce shows the date of issue of the stock in question as July 31, 1957; and that the minutes of the January 7, 1958 meeting show that the stock bonus had been "previously approved" by the board of directors. Even if we concede that the stock certificate was not actually issued, in light of the foregoing facts, we are compelled to hold that the stock was constructively received by petitioner in 1957. Rufus controlled the situation and could have had the certificates issued to himself at any time. The issuance had been unanimously approved by the board of directors. We are next directed by the appellate court to find the market value of the stock, for that amount must be included in petitioners' 1957 gross income. [3]
*182 The valuation of stock for tax purposes is a factual matter. Hamm v. Commissioner, 325 F. 2d 934 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court; William F. Harrah, 27 B.T.A. 1305 (1933). And it is petitioners' burden to prove that the value of the stock is other than the $50 a share at which they included it in their return, and which value was adopted by the respondent. Petitioners introduced two witnesses who testified that the value of the 200 shares was considerably below $50 per share. One witness, who was also in the wholesale business, had first seen the information upon which he was asked to estimate the stock value the morning of the trial and had formed an opinion almost instantaneously. He had no knowledge of the transactions involving the Cash Produce stock and did not consider himself an expert as to the value of the shares. He stated that he was giving only his personal opinion, basing his estimate in part on his belief that the good will had no value. [4] The other witness, a bank vice president, arrived at his figure by "a simple bank value calculation, leaving out certain assets to which [he] [attached] no value." No *183 indication was given as to which assets were left out. The unsubstantiated testimony of the two witnesses is of no assistance in arriving at a valuation of the stock. See Anderson v. Commissioner, 250 F. 2d 242, 249 (C.A. 5, 1957), affirming on this issue a Memorandum Opinion of this Court, certiorari denied 356 U.S. 950; see also First Seattle Dexter Horton Nat. Bank, 27 B.T.A. 1242, 1249 (1933), affirmed 77 F. 2d 45 (C.A. 9, 1935). Petitioners further argue that the stock cannot be valued at $50 per share because it is a minority interest in a family-owned business. A minority interest in a family-owned business may be entitled to some discount in evaluation. See Whittemore v. Fitzpatrick, 127 F. Supp. 710 (D. Conn., 1954). In the present case, however, an outsider is not acquiring a minority interest in a family corporation; rather the owner of the largest block of shares is increasing his holding and *184 diluting the value of the other interests. Surely, he cannot complain that this block is worth less to him, when, if anything, it would seem to be worth more. The book value of the stock, as of July 31, 1957, was $51 a share. [5] "In the valuation of closely held stock the book value must serve as a basis, if the result * * * is to be anything more than a 'dignified guess.'" Grant Trust & Savings Co., Trustee, 3 B.T.A. 1026, 1029 (1926). Petitioners have not convinced us that the value of the stock was less than the $50 per share at which they included it in their return. What facts we have lead to a conclusion that the stock was, and is, correctly valued $50at a share. The corporate journal entry and stock certificate book, as well as the transfer of stock to Marguerite and the Ingrams at $50 a share, substantiates the valuation. The "Stock Statement" filed with the State Corporation Commission, and the minutes of the January 7, 1958, annual meeting, also compel the same conclusion. Having considered all the available evidence, we find that the stock had a market *185 value of $50 a share when issued to petitioner. See Penn v. Commissioner, 219 F. 2d 18 (C.A. 9, 1955), affirming a Memorandum Opinion of this Court; Joseph R. Culhane, 31 T.C. 758 (1959). A further contention of petitioners is that they urge that the stock bonus is in the nature of a stock dividend and so is nontaxable. However, this is not a case where a stock dividend was declared on all common stock, but was a payment of stock to petitioner as a salary bonus, all of which is taxable up to its fair market value. Finally, petitioners assert that the Tax Court has no jurisdiction, under the Constitution, to hear this proceeding upon remand from the appellate court. If petitioners are seriously pursuing this argument, it would seem that their complaint should more properly be addressed to the appellate court in view of their conclusion on brief, "that any remand from the Circuit Court of Appeals should be made to a Federal District Court and not to any independent agency in the Executive Branch of the Government." Prolonged consideration of this argument seems unnecessary, however, since - The taxpayer may not unilaterally oust the Court from jurisdiction *186 which, once invoked, remains unimpaired until it decides the controversy. Main-Hammond Land Trust v. C.I.R., 17 T.C. 942, affirmed 6 Cir., 200 F. 2d 308. [United States v. Shepard's Estate, 196 F. Supp. 281, 284 (N.D.N.Y., 1961), affirmed as modified on other issues, 319 F. 2d 699 (C.A. 2, 1963).] Decision will be entered for the respondent. Footnotes
1. SEC. 451 [I.R.C. 1954]. GENERAL RULE FOR TAXABLE YEAR OF INCLUSION. (a) General Rule. - The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period.↩
2. Sec. 1.451-2(a), Income Tax Regs.
(a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account or set apart for him so that he may draw upon it at any time. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. Thus, if a corporation credits its employees with bonus stock, but the stock is not available to such employees until some future date, the mere crediting on the books of the corporation does not constitute receipt.↩
3. Sec. 1.61-2, Income Tax Regs.
* * *
(d) Compensation paid other than in cash - * * * (4) Stock and notes transferred to employee or independent contractor. * * * [If] a corporation transfers its own stock to an employee or independent contractor as compensation for services, the fair market value of the stock at the time of transfer shall be included in the gross income of the employee or independent contractor. * * *↩
4. The appellate court "accepted the [Tax Clourt's finding of the value of the good will transferred to the corporation [as $74,300]." Turner v. Commissioner, 303 F. 2d 94, 97↩ (C.A. 4, 1962).
5. $85,000 common stock and $1,701.14 retained earnings divided by 1,700 shares $51equals a share.↩