**WHAM CONSTRUCTION COMPANY, INC., a corporation, Appellee,**

v.

**UNITED STATES of America, Appellant.**

No. 76–2047.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1978.

Decided July 6, 1979.

Philip I. Brennan, Tax Div., Dept. of Justice, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Jonathan S. Cohen, Tax Div., Dept. of Justice, Washington, D.C., Mark W. Buyck, Jr., U.S. Atty., Columbia, S.C., on brief), for appellant.

Theodore A. Snyder, Jr., Walhalla, S.C. (Wofford & Bannister, Greenville, S.C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and RUSSELL, Circuit Judge.

HAYNSWORTH, Chief Judge:

The district court ordered a refund of income taxes paid, and the United States has appealed. It contends that when a subsidiary corporation was formed the parent corporation obtained "other property" which was taxable to it as ordinary income. We agree with the district court that it did not.

For approximately ten years two brothers, Norman and James Wham, were engaged as partners in the operation of a construction business. The business was principally concerned with highway construction, though it did no asphalt work. Late in that period, however, they acquired an asphalt plant and entered into the asphalt paving business. The asphalt paving business, however, was operated as a wholly independent division of the partnership, maintaining separate books of account and separate bank accounts.

In 1959 the brothers incorporated their businesses under one corporate roof, but they continued to operate the two separate businesses as if they were separate entities with a few exceptions noted below. Each continued to have its own bank account, its own separate books. Receipts of each division were deposited only in its bank accounts and purchases of each division were paid for or financed exclusively by it. However, the construction division advanced funds to the asphalt division. This was made particularly necessary because only one capital account was maintained, and that was on the books of the construction company. Thus the books of the asphalt division reflected no net income, all of which was revealed in the capital account on the books of the construction division. This necessitated advances by the construction division to the asphalt division, and these interdivisional transactions were reflected in interdivisional accounts. On the books of the asphalt division an accounts payable item reflected the net balance for the time being of the sums "owed" the construction division, while an accounts receivable item on the books of the construction division reflected the same amount as due it from the asphalt division.

The two brothers decided that they would separate their one corporate house into two, effective at the end of 1966. They organized a new corporation, Wham Asphalt Company, Inc., which issued all of its capital stock to Wham Construction Company in exchange for cash, receivables, inventory and capital assets, which, net of certain stated liabilities, would permit Asphalt to continue its asphalt paving business in its separate corporate home.

Included on the books of the new asphalt corporation was an account payable to the construction company in the amount of $160,402.50. This was the old intra-company account payable after substantial downward adjustment for the depreciated value of certain trucks and equipment which were not transferred to the new asphalt corporation. Several months after its incorporation, Asphalt paid that amount to the construction company.

It was the retention of this receivable when the asphalt subsidiary was created which the Commissioner treated as other property requiring the denial of nonrecognition of gain under §§ 351(a) and 361(a) of the Internal Revenue Code of 1954.[1]

We think the position of the Commissioner entirely too technical and unrealistic. There was not only a retention of the construction company of this "receivable" after the downward adjustments to which we have referred; there was a transfer to the new asphalt corporation of cash and receivables in an amount sufficient to enable the asphalt company to clear its payable within a matter of several months. At the outset, Construction transferred to its new subsidiary over $107,000 in cash and over $54,000 in receivables. For its launching, the new asphalt corporation did need some quick assets, but nothing like the amount with which it was endowed, as the quick payoff demonstrates. To the extent that it did need quick assets for operating purposes in the beginning, the asphalt company could have gotten a bank loan. In that event, without the quick assets received from Construction and the countering account payable, there is no doubt there would have been no recognition of gain in the transaction. Nor is there doubt that, had the asphalt subsidiary been set up with no quick assets and no account payable to the construction company, the construction company itself, a few days after creation of its subsidiary, could have advanced funds to it. If the advance had totaled $160,000 and had been repaid within a few months, as was this payable, there would have been no receipt of "other property" within the meaning of §§ 351(b) or 361(b). Counsel for the United States conceded as much on oral argument.

---

1. The taxpayer had deducted depreciation on assets transferred to Asphalt of more than $160,000 since December 31, 1961. The Commissioner treated the entire $160,000 as ordinary income under Section 1245.

Moreover, it is readily apparent that what it got it already owned. What the brothers did was to wrap the asphalt business, close to its reflection on the separate asphalt division books, into a new corporate housing. There was no substantive change, and, had the adjusted intra-company account not been carried forward, the asphalt corporation would not have been provided with the quick assets necessary to its repayment. At least in substantial part the $160,000 which the asphalt corporation paid to the construction company in the summer of 1967 was a derivative of the cash and receivables transferred to the asphalt company by Construction at the time of Asphalt's formation, items upon which the construction company had already been fully taxed once.

The purpose of § 351 is to insure that no tax consequence will be recognized when one or more persons transfer property to a corporation solely in exchange for stock or securities in such corporation when the transferor or transferors immediately after the exchange are in control of the corporation. When there has been only a change in form and the transferor has not received anything which, in an economic sense, he did not possess before, he should not suffer the imposition of income tax liability. *See Portland Oil Co. v. Commissioner*, 109 F.2d 479 (1 Cir. 1946). When there is but one transferor, as here, and the issuing corporation has no assets except those derived from the transferor, it is difficult to conceive of a concept that the transferor as a result of the transaction received anything which he did not have before unless the exchange was couched in terms of a sale. The exchange here, however, cannot be regarded as a partial sale, for the $160,000 receivable

was the same old receivable that had been on the construction division books after adjustment for asphalt division trucks and equipment not transferred. And since its retention necessitated the transfer of quick assets to provide the asphalt corporation with a healthy beginning, it was a giving with one hand what the other hand retained. In short, there was no economic change of substance effected by the exchange, and the construction company received in the exchange no "other property" within the meaning of §§ 351(b) or 361(b).

We look to the substance of the transactions of the brothers, and not the mere form of their dealings.[2] We conclude that no taxable event occurred in the exchange and that the district court correctly ordered a refund.

AFFIRMED.

---

**2.** Usually tax liability is determined by an examination of the substance, and not the form of financial arrangements. *E. g., Harrison v. Schaffner*, 312 U.S. 579, 581–82, 61 S.Ct. 759, 85 L.Ed. 1055 (1941); *Higgins v. Smith*, 308 U.S. 473, 476–77, 60 S.Ct. 355, 84 L.Ed. 406 (1940); *Eisner v. Macomber*, 252 U.S. 189, 206, 40 S.Ct. 189, 64 L.Ed. 521 (1920); *Doyle v. Mitchell Brothers Co.*, 247 U.S. 179, 187, 38 S.Ct. 467, 62 L.Ed. 1054 (1918); *Turner v. C. I. R.*, 303 F.2d 94, 97 (4th Cir. 1962); *Boykin v. C. I. R.*, 260 F.2d 249, 254 (8th Cir. 1958); *Ander-*

*son v. United States*, 232 F.2d 794, 800 (9th Cir. 1956); *Helvering v. Richmond, F. & P. R. Co.*, 90 F.2d 971, 973–74 (4th Cir. 1937). Similarly, tax liability is not determined by the taxpayer's bookkeeping methods or the designations he employs in recording transactions. *E. g., Helvering v. Midland Mutual Life Ins. Co.*, 300 U.S. 216, 233, 57 S.Ct. 423, 81 L.Ed. 612 (1937); *Hash v. C. I. R.*, 273 F.2d 248, 251 (4th Cir. 1959); *Stout v. C. I. R.*, 273 F.2d 345, 351 (4th Cir. 1959); 1 *Mertens Law of Federal Income Taxation* § 5.09 (1974 Rev.).